**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**JOHN BAACKES,**

                                   **Plaintiff,**


             **v.**                                              **1:12-CV-583**
                                                                  **(FJS/RFT)**

**KAISER FOUNDATION HEALTH PLAN, INC.;**
**KAISER PERMANENTE RETIREMENT PLAN;**
**and KAISER PERMANENTE SALARIED**
**RETIREMENT PLAN SUPPLEMENT TO THE**
**KAISER PERMANENTE RETIREMENT**
**PLAN,**

                                   **Defendants.**

_____

**APPEARANCES**                                 **OF COUNSEL**

**GLEASON, DUNN, WALSH**              **DANIEL A. JACOBS, ESQ.**
**& O'SHEA**                                       **MARK T. WALSH, ESQ.**
40 Beaver Street
Albany, New York 12207
Attorneys for Plaintiff


**TRUCKER HUSS**                               **CHARLES M. DYKE, ESQ.**
One Embarcadero Center
12th Floor
San Francisco, California 94111
Attorneys for Defendants


**SEYFARTH SHAW LLP**                       **MARY E. AHRENS, ESQ.**
620 Eighth Avenue
New York, New York 10018-1405
Attorneys for Defendants


**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On April 4, 2012, Plaintiff filed his initial complaint against Defendants. *See* Dkt. No. 1.

On June 4, 2012, he filed an amended complaint, in which he asserted the following eight claims

under the Employee Retirement Income Security Act ("ERISA"): (1) Defendants had no basis in

the Plan or documents that justified their denial of his lump sum benefit; (2) Defendants could

not change their initial rationale for denial of benefits; (3) even if Defendants could change their

initial rationale, the documents on which they relied were not in effect at the time of Plaintiff's

employment; (4) the relevant provisions of the Plan did not exclude his service with CHP to vest

and count towards accrual of his retirement benefits; (5) Defendants violated their fiduciary

duties and certain obligations under ERISA; (6) he had justifiably relied on the official

determination of his benefits to his detriment; (7) Defendants were estopped from changing their

reasoning; and (8) the Appeals Sub-Committee's determination was untimely and, thus, an abuse

of discretion. *See* Dkt. No. 17, Amended Complaint at ¶¶ 44-50; 52-62; 64-66; 68-74; 76; 78-81;

83-86; 94-95. In addition, Plaintiff alleged a claim for breach of contract. *See id.* at ¶¶ 88-91.

Currently before the Court are Defendants' motions for summary judgment and judgment

on the pleadings, *see* Dkt. Nos. 23-24, and Plaintiff's cross-motion for leave to amend his

amended complaint, *see* Dkt. No. 28.


## II. BACKGROUND

Plaintiff began work for the Community Health Plan ("CHP") on December 1, 1976. *See*

Dkt. No. 23-3, Defendants' Statement of Material Facts at ¶ 1. Plaintiff worked for CHP 20 years

prior to its merger with Defendant Kaiser Foundation Health Plan ("Kaiser") in August 1996. *See id.* at ¶ 2. On January 1, 1997, Plaintiff began work for Defendant Kaiser as President of the Kaiser Permanente Northeast Division and joined Defendants' retirement plan. *See id.* at ¶ 3. On October 1, 1998, Plaintiff's employment ended with Defendant Kaiser. *See id.* at ¶ 4. Plaintiff advised Defendant Kaiser of his plans to retire in November 2010, and subsequently retired on February 1, 2011, shortly after his sixty-fifth birthday. *See id.* at ¶ 7.

Third-party administrator Aon Hewitt sent Plaintiff a Pension Calculation Statement ("December 13, 2010 letter"), in which it calculated a retirement benefit in the amount of $782,733.65. *See id.* at ¶ 8. In February 2011, Plaintiff received a lump sum distribution in that amount. *See id.* at ¶ 17. Within a month, on March 1, 2011, Plaintiff received a notice explaining the overpayment. *See id.* at ¶ 18. The figure to which Plaintiff was entitled according to the Overpayment Notice was $54,264.62. *See id.* at ¶ 19. Defendants informed Plaintiff that their initial calculation was based on an incorrect termination date of November 23, 2001, 21.87 years of Credited Service, and a final average monthly pay of $16,190.48. *See id.* at ¶ 17.

Defendants concede that the initial reasoning given in the Overpayment Notice was incorrect; i.e., the Notice stated it was due to Plaintiff's paying into a Defined Contribution Plan from December 1, 1976, through December 31, 1996. *See id.* at ¶ 20. On August 24, 2011, Benjamin F. Spater, counsel for Defendant Kaiser, sent a letter to Plaintiff ("August 24, 2011 Denial Letter") explaining that, based on the provisions of the Plan, Plaintiff was entitled to a lump sum of $57,232.61, *see id.* at ¶ 24; he also informed Plaintiff that he had the right to appeal this decision, *see id.* at ¶ 28. On September 13, 2011, Plaintiff received the Plan document that was in effect when he became a participant in the Plan ("1997 Plan Document"). *See id.* at ¶ 29.

Plaintiff appealed the decision on November 21, 2011. *See id.* at ¶ 30. On April 13, 2012, Defendant Kaiser's Appeals Sub-Committee heard Plaintiff's appeal. *See id.* at ¶ 32. Plaintiff, relying on *Hall v. Metro. Life Ins. Co.*, 259 F. App'x 589, 593-94 (4th Cir. 2007), argued that a plan administrator was disallowed from changing its initial rationale. *See id.* at ¶ 45. The Sub-Committee disagreed, stating that the Plan administrator had discretion to correct a former mistake and/or add revised reasons. *See id.* at ¶ 46. In addition, the Sub-Committee determined that a full *de novo* review was unnecessary because the Plan administrator had not made any procedural errors. *See id.* at ¶ 48. On April 18, 2012, the Sub-Committee sent notice to Plaintiff outlining the basis for its decision to deny Plaintiff's appeal.

The Sub-Committee concluded that Plaintiff was not eligible to receive credited service for his 20-year employment at CHP. *See id.* at ¶ 52. The Sub-Committee also determined that the mere fact of payment was not a documentary basis for Plaintiff's entitlement to this amount. *See id.* at ¶ 53. In addition, the Sub-Committee addressed Plaintiff's assertion that he was never told that his previous work for CHP would count only as vesting credit for eligibility purposes, rather than benefit credit, *see id.* at ¶ 56, by noting that, in fact, on January 31, 1997, Defendants had sent a letter to Plaintiff's financial representative, projecting his benefits ("1997 Benefits Letter), *see id.* at ¶ 57. Notably, that letter did not include Plaintiff's previous work in the calculus to project future benefits – i.e., his projection for January 1, 2002, showed "Credited Service (years) – 5.00." *See id.* at ¶¶ 58-59.

Furthermore, the Sub-Committee addressed Plaintiff's concern that the August 24, 2011 Denial Letter cited the 2010 version of the Current Plan Document and Supplement, thus, regulations that were not in effect when Plaintiff worked for Defendant Kaiser in 1997, *see id.* at

-4-

¶ 60, by explaining that there was no difference in calculation of retirement benefits from the 1997 to the 2011 version, *see id.* at ¶ 61. Therefore, in recalculating the retirement benefits, the Sub-Committee determined that the total lump sum to which Plaintiff was entitled equaled $57,232.61, an amount equal to that set forth in the August 24, 2011 Denial Letter. *See id.* at ¶ 73.

## III. DISCUSSION

### A.     Plaintiff's breach-of-contract claim

Defendants have moved for judgment on the pleadings with respect to Plaintiff's breach-of-contract claim, arguing that ERISA preempts that claim. *See* Dkt. No. 24. In response, Plaintiff has cross-moved for leave to amend his amended complaint to clarify his breach-of-contract claim and to substantiate his argument that ERISA does not preempt this claim. *See* Dkt. No. 28-1 at 5. For the reasons explained below, because ERISA does preempt Plaintiff's breach-of-contract claim, even with the proposed amendment to that claim, the Court grants Defendants' motion for judgment on the pleadings and denies Plaintiff's cross-motion for leave to amend because the proposed amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (stating that courts need not grant leave to amend if the amendment would be futile).

In *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), the Supreme Court stated that "[a]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* at 209 (citations omitted). In *Davila*, the Supreme Court created a two-part test to delineate what falls "'within the scope' of ERISA § 502(a)(1)(B)[.]" *Id.* at 211.

Under this test, "if an individual, at some point in time, [1] could have brought his claim under ERISA § 502(a)(1)(B), *and* [2] . . . there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." *Id.* at 210 (emphasis added). When analyzing the first prong of the *Davila* test, the court must consider two other factors: (a) "whether the plaintiff is the *type* of party that can bring a claim pursuant to § 502(a)(1)(B)" and (b) "whether the *actual claim* that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)." *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 328 (2d Cir. 2011) (citation omitted).

Furthermore, § 514(a) of ERISA preempts "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan[.]" 29 U.S.C. § 1144(a). Section 514(a) also preempts state-law claims that "relate to" an ERISA covered employee benefit plan. *Pronti v. CNA Fin. Corp.*, 353 F. Supp. 2d 320, 324 (N.D.N.Y. 2005). "[A] state law is preempted even though it does not refer to ERISA or ERISA plans if it has a clear 'connection with' a plan in the sense that it 'mandate[s] employee benefit structures or their administration' or 'provid(es) alternative enforcement mechanisms.'" *Plumbing Indus. Bd. v. E.W. Howell Co., Inc.*, 126 F.3d 61, 67 (2d Cir. 1997) (quotation omitted). Lastly, courts have typically found that "state laws affecting the determination of eligibility for benefits, amounts of benefits, or means of securing unpaid benefits . . . to be preempted." *Gerosa v. Savasta & Co., Inc.,* 329 F.3d 317, 324 (2d Cir. 2003) (citation omitted).

Applying these principles, the Second Circuit held in *Arditi v. Lighthouse, Int'l*, 676 F.3d 294 (2d Cir. 2012), that ERISA preempted the plaintiff's claim because he could have brought it

under ERISA and because the employment agreement simply promised benefits under the plan. *See id.* at 300.  In other words, the contractual promise did not give rise to an independent legal duty which would place the breach-of-contract claim outside of ERISA's preemptive reach because the claim was intertwined with the retirement plan.  *See id.*  Similarly, in this case, Plaintiff's Employment Agreement with Defendant Kaiser, in section 4(d), provides that Plaintiff "shall be entitled to receive the fringe benefits accorded to employees at his level."  *See* Dkt. No. 29-1, Exhibit "B" at 7.  This contractual language does no more than promise Plaintiff that he will receive certain benefits under the Plan.  Furthermore, Plaintiff's claim for benefits is interconnected with the retirement benefit plan.  As Defendants correctly state, "[w]ithout the Plan, there would be no dispute and Plaintiff would have no basis to claim an entitlement to any amount of the retirement benefits."  *See* Dkt. No. 24-1 at 10 (citation omitted).

As a review of the record makes clear, even with Plaintiff's proposed amendment, his breach-of-contract claim is not an independent cause of action that escapes ERISA's preemptive reach.  Therefore, the Court denies Plaintiff's cross-motion to amend as futile and grants Defendants' motion for judgment on the pleadings with respect to Plaintiff's breach-of-contract claim.

**B.      Defendants' motion for summary judgment**

*1. Standard of review*

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  There is no

genuine issue of material fact when "'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quotation omitted). The court will grant summary judgment if the non-moving party's "evidence is merely colorable . . . or is not significantly probative . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted).

### 2. Review of an administrator's decision (Claims 1-4, part of 5, and 9)

"Principles of trust law require courts to review a denial of plan benefits 'under a *de novo* standard' unless the plan provides to the contrary." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008) (quotation and other citations omitted). "Where the plan provides to the contrary by granting 'the administrator or fiduciary *discretionary authority* to determine eligibility for benefits,' . . ., '[t]rust principles make a *deferential standard* of review appropriate,' . . . ." *Id.* (internal citations omitted). "If 'a benefit plan gives discretion to an administrator or fiduciary who *is operating under a conflict of interest*, that conflict must be *weighed as a "factor* in determining whether there is an abuse of discretion."'" *Id.* (quotation omitted).

Plaintiff appears to argue that a *de novo* review is appropriate in this case because Defendants are operating under a structural conflict of interest and the Plan either did not grant the administrator discretionary authority to determine eligibility for benefits or because Defendants committed flagrant delays such that Plaintiff should be deemed to have exhausted his administrative remedies. *See* Dkt. No. 29-3 at 11.

Plaintiff's argument fails for two reasons. First, Section E-6(a) of the Plan provides that "[t]he Administrative Committee has *full* power, authority and *discretion* to administer the Plan,

and to do all things necessary or convenient in connection therewith." *See* Dkt. No. 7-11, Exhibit "K" at 32 (emphasis added). Furthermore, Section E-6(b) provides that "[t]he Administrative Committee establishes procedures for determining questions arising in the administration, interpretation and application of the Plan and shall have the *sole discretion to interpret the terms of the Plan* and *to determine eligibility for benefits* under the Plan." *See id.* (emphasis added). This language explicitly provides that the Plan grants the administrator the discretionary authority to determine eligibility for benefits. In addition, the existence of a conflict of interest does not change the standard of review; rather, this conflict is one factor that the Court must weigh in determining whether the administrator abused its discretion in denying Plaintiff's claim for benefits. *See Glenn*, 554 U.S. at 111 (quotation omitted). For all these reasons, the Court will review the administrator's decisions for abuse of discretion.

When reviewing an administrator's decision under an abuse of discretion standard, the court must determine "'"whether [the defendant's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."'" *Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d Cir. 1995) (quotation omitted). Moreover, courts are not allowed to "disregard a pension committee's reasonable interpretation of plan provisions." *Miles v. New York State Teamsters Conf. Pension & Ret. Fund Employee Pension Benefit Plan*, 698 F.2d 593, 599 (2d Cir. 1983). Further, "the lawful, discretionary acts of a pension committee should not be disturbed, absent a showing of bad faith or arbitrariness." *Id.* (citations omitted).

In claims 1-4 and 9 and part of claim 5, Plaintiff attacks various aspects of the appeals procedure. Specifically, Plaintiff asserts that the initial determination of benefits was not

grounded in the Plan's rule, that Defendants were precluded from changing the determination's rationale, that the rationale was based on outdated documents, that the committee's interpretation was unreasonable, that a structural conflict of interest existed whereby Defendants breached their fiduciary obligations, and that Defendants provided their final decision too late. *See* Dkt. No. 8 at ¶¶ 44-50, 52-62, 64-66, 68-74, 88-95. The Court will address each of these arguments in turn.

In his first claim, Plaintiff argues that Defendants initially denied the claim of the amount of the benefit because Plaintiff was "participating in the Defined Combination Plan." *See* Dkt. No. 23-3 at ¶ 20. In his second claim, Plaintiff contends that the initial determination of benefits on the Pension Calculation Statement was "final," so that Defendants were estopped "from paying [him] any amount less than that set forth in the official benefit statement." *See* Dkt. No. 8 at ¶ 81. However, as previously stated, the Plan explicitly vests wide discretion in the Appeals Sub-Committee. Thus, it was not an abuse of discretion for the Appeals Sub-Committee to find that a change in rationale was within the Plan administrator's discretion.

In his third claim, Plaintiff alleges that "the Plan language relied upon in the Spater Letter was not in effect at the time [Plaintiff] was an employee of Kaiser and cannot therefore, validly or lawfully apply to him." *See* Dkt. No. 8 at ¶ 64. The Appeals Sub-Committee found that the reason why Mr. Spater cited to provisions in the Current Plan Document was because that was the year that Plaintiff applied for benefits. *See* Dkt. No. 23-3 at ¶ 60. Furthermore, there was no difference in the way in which benefits were calculated from the 1997 Plan Documents and Supplements to the 2010 Plan Documents and Supplements. *See id.* at ¶ 61. Lastly, the Sub-Committee, on appeal, looked at the documents from 1997, even though the provisions were identical. *See id.* at ¶ 62. Thus, the Court finds that the Appeals Sub-Committee did not abuse

its discretion in this regard.

In his fourth claim, Plaintiff alleges that the Appeals Sub-Committee's interpretation of the Plan was unreasonable. Plaintiff contends that Article H, which defines "credit service," Section A-4(a)(ii), which explains "Credited Service After 1975," and Section A-4(b), which refers to "Credited Service for Employment in Other Categories," are inclusive of Plaintiff's employment with CHP, or at least do not exclude Plaintiff's employment with CHP. *See* Dkt. No. 8 at ¶¶ 69-72.

The record, however, indicates that the Appeals Sub-Committee reviewed all relevant provisions of the Plan and interpreted them reasonably. First, section A-4(b) of the Plan provides that "Credited Service includes Hours of Employment in an Employee Category not covered by this Plan if such period of employment is followed by a period of employment in an Employee Category covered by this Plan, unless such Hours of Employment are specifically excluded by Section A-4(c) below." *See* Dkt. No. 7-12 at 8.

Notably, section A-4 provides that participants only receive Credited Service for their "Hours of Employment," which is defined in Article H as each hour an employee is entitled to payment by "an Employer or an organization listed in the Medical Care Organization Appendix[.]" *See* Dkt. No. 23-3 at ¶ 64. Although the Medical Care Organization Appendix lists CHP, effective as of December 31, 1997, this was almost a year after Plaintiff began working for Defendant Kaiser, on January 1, 1997. *See* Dkt. No. 7-11 at 56.

In addressing Section A-4(b), the Appeals Sub-Committee concluded that, under the applicable Plan provisions, Plaintiff was "only entitled to years of Service, not Credited Service, for the time he was employed with CHP." *See* Dkt. No. 32 at 11. "Therefore, his correct years of

Service were 21.78 and his correct years of Credited Service were 1.78." *See id.* The Sub-

Committee also explained that, "'because Plaintiff did not work for a covered employer (i.e., an

organization listed in the Medical Care Organization Appendix) prior to beginning his

employment with [Defendant] Kaiser on January 1, 1997, . . . he did not have any Hours of

Employment prior to that date.'" *See id.* (quotation omitted).

Second, section B-1 of the Plan, which refers to "Vesting of Benefits," provides as

follows:

> A Participant who has completed five years of Service and has one
> Hour of Employment after January 1, 1989, or who has one Hour
> of Employment on or after attaining age 65, has a nonforfeitable
> right to 100% of his Accrued Benefit.
>
> A Participant who has completed five years of Service has a
> nonforfeitable right to 100% of his Accrued Benefit.

*See* Dkt. No. 7-11 at 8.

Based on this language, the Court finds that the Appeals Sub-Committee reasonably concluded

that Plaintiff had sufficient vesting credits to meet the requirements of B-1. *See* Dkt. No. 23-1 at

26.

Third, Appendix C of the Plan, which refers to "Additional Hours Counted as Service,"

provides that "[e]mployment prior to July 22, 1996 with CHP Companies, Inc. and Community

Health Plan shall count as Service but not as Credited Service." *See* Dkt. No. 7-11 at 58. The

plain language of the relevant provisions supports the Sub-Committee's decision. Specifically,

the Sub-Committee reasonably determined that Plaintiff was only entitled to Credited Service for

the time he worked at Defendant Kaiser, which did not commence until 1997. Thus, his previous

20 years of work at CHP did not vest for the purposes of calculating his retirement benefit under

the Plan.

In part of his fifth claim, Plaintiff alleges a breach of fiduciary duties. Admittedly, Defendants are fiduciaries and owe a duty of care to Plaintiff as a participant in the Plan. That duty of care involves a prohibition against interested self-dealing. Defendants contend that the "[f]unding of the trust is determined by an independent actuary in accordance with complex rules under ERISA and the Internal Revenue Code (the "Code"), only one factor of which involves the claim experience of the Plan." *See* Dkt. No. 23-1 at 23 (citations omitted). Specifically, the language in the Plan highlights Defendant Kaiser's lack of financial incentive to deny benefits, since the money is paid out from an independent entity. In its "Introduction" the Plan provides as follows:

> The purpose of this Plan is to provide retirement benefits for Medical Care Organization Employees who meet specified requirements. Benefits are funded by contributions from participating Medical Care Organizations. Plan Assets are invested in a Fund established exclusively for Medical Care Organizations' retirement plans. The Fun is held in a *trust* by a bank.

*See* Dkt. No. 7-11 at 5 (emphasis added).

The evidence demonstrates that there is no financial incentive for the Appeals Sub-Committee to rule against Plaintiff. Furthermore, the Court finds that there is nothing in the record to indicate that Defendants breached their duty of care to Plaintiff.

In addition, in his fifth claim, as well as in his ninth claim, Plaintiff contends that Defendants breached their fiduciary duties by failing to comply with the timeliness requirements set forth in the applicable ERISA provisions. First, Plaintiff cites to Article E, "Administration and Management Of The Plan And Plan Assets," specifically Section E-7, which provides as

follows:

> *The Plan Administrator promptly approves or denies each claim*
> *and shall notify the Participant, joint annuitant or Beneficiary no*
> *later than 90 days after the receipt of the written claim. . . . If a*
> claim is denied, the claimant is advised in writing of the specific
> reasons for denial, including a specific reference to pertinent Plan
> provisions on which the denial is based and a description of any
> additional material or information necessary for the claimant to
> perfect the claim and an explanation of why the material or
> information is necessary.  In addition, the claimant is given an
> explanation of the Plan's claim review procedure, and the time
> limits applicable to such procedures, including that claimant may
> have his claim reviewed by the Administrative Committee and that
> he has the right to bring a civil action under Section 502(a) of
> ERISA following an adverse determination on review.

*See* Dkt. No. 7-11 at 33 (emphasis added).

This time frame is reiterated in the regulations governing ERISA's enforcement.  The

rules and regulations applicable to ERISA provide that, if the claim is denied, "the plan

administrator shall notify the claimant . . . of the plan's adverse benefit determination within a

reasonable period of time, but not later than 90 days after receipt of the claim by the plan, unless

the plan administrator determines that special circumstances require an extension of time for

processing the claim."  29 C.F.R. § 2560.503-1(f)(1).

Plaintiff argues that May 5, 2011, is the date from which to measure the ninety-day time

period because that was the date on which his attorney sent a letter to Defendants requesting that

they send all relevant provisions to him.  *See* Dkt. No. 29-3 at 13.  Defendants contend that this

letter does not constitute the filing of an initial claim.  *See* Dkt. No. 32 at 8.  The Court agrees

with Defendants.  The Sub-Committee expressly stated that the Plan did not commit any

procedural errors warranting *de novo* review because Plaintiff had not submitted an actual formal

claim prior to the August 24, 2011 Denial Letter. *See* Dkt. No. 23-1 at 15-16; Dkt. No. 32 at 9.

In addition, Plaintiff contends that the determination of the appeal itself was late and, thus, a breach of Defendants' fiduciary duties.[1] On November 21, 2001, Plaintiff submitted his appeal of the decision. ERISA's regulations require that appeals of adverse benefit determinations be decided within a reasonable time but not later than sixty days after receipt of the appeal. *See* 29 C.F.R. § 2560.503-1(h)(4)(i)(1)(i). However, there is an exception if a committee that holds regularly scheduled meetings conducts the appeals. In that case, the benefit determination will instead be made,

> *no later than the date of the meeting* of the committee or board that immediately follows the plan's receipt of a request for review, unless the request for review is filed within 30 days preceding the date of such meeting. . . . If such an extension of time for review is required because of special circumstances, the plan administrator shall provide the claimant with written notice of the extension, describing the special circumstances and the date as of which the benefit determination will be made, prior to the commencement of the extension.

29 C.F.R. § 2560.503-1(h)(4)(i)(1)(ii) (emphasis added).

Since the Appeals Sub-Committee holds regularly scheduled meetings, it fits within the parameters of 29 C.F.R. § 2560.503-1(i)(1)(ii). The question, therefore, is whether rescheduling an appeals meeting based on lack of a quorum, from March 27, 2012, until April 13, 2012, constitutes non-compliance with the applicable ERISA provisions and is an abuse of discretion. Although Plaintiff admits that Defendants sent him a letter regarding the new date for the final

---

[1] In his ninth claim, Plaintiff also contends that the untimeliness of the appeal required a *de novo* review. However, as the Court has already noted, because the Plan provides the administrator with discretion to determine the eligibility for benefits, the appropriate standard of review is abuse of discretion.

appeals meeting, he argues that the reason for rescheduling the date was not explicitly written to identify "extraordinary circumstances" and that, therefore, Defendants violated ERISA. *See* Dkt. No. 29-3 at 16.

Plaintiff's argument has no merit. "[T]he case law in this Circuit indicates that where the administrator communicates with the claimant regarding the status of [his] appeal, acts in good faith, and does not delay its decision unreasonably, its failure to comply with the regulation deadlines may be excused." *Pava v. Hartford Life & Accident Ins. Co.*, No. 03 CV 2609, 2005 WL 2039192, *9 (E.D.N.Y. Aug. 24, 2005); *see also Robinson v. Metro. Life Ins. Co.*, No. 06 Civ. 7604, 2007 WL 3254397, *2 (S.D.N.Y. Nov. 2, 2007) (quotation omitted).

There is nothing in the record to indicate that Defendants failed to communicate with Plaintiff, lacked good faith, or unreasonably delayed action on Plaintiff's claim. Defendants sent Plaintiff the August 24, 2001 Denial Letter. Plaintiff appealed that decision on November 21, 2011. After notifying Plaintiff of a change in the board meeting date, the Appeals Sub-Committee promptly heard the appeal on the re-scheduled date. On April 13, 2012, the Sub-Committee reviewed the entire record and all relevant provisions of the Plan. Within five days of the hearing, on April 18, 2012, the Sub-Committee sent Plaintiff a letter, explaining its reasons for denying his appeal. Based on this record, the Court concludes that Defendants did not abuse their discretion or violate their fiduciary duties to Plaintiff with regard to the timeliness of their determination of Plaintiff's appeal.

In sum, the evidence demonstrates that Defendants' administrative process was valid and legitimate. Moreover, there is no evidence from which the Court could infer that Defendants engaged in deliberately egregious and calculating behavior that would warrant a finding that the

process was mistake-laden or ripe with irregularities that sought to deny Plaintiff his

administrative rights.  Instead, Defendants notified Plaintiff of his voluntary rights to submit a

claim and to appeal an adverse decision.  Furthermore, the Appeals Sub-Committee's

interpretation of the Plan was reasonable, and Plaintiff has not presented a reasonable

alternative.[2]  Lastly, with regard to Plaintiff's timeliness concerns, the Court reiterates that the

appeal determination was not late because Plaintiff did not initiate an official appeals claim until

after Defendants sent him the August 24, 2011 Denial Letter.  Further, an adjournment of the

Appeals Sub-Committee's meeting for lack of a quorum was, at best, mere procedural tardiness.

Thus, for all the above-stated reasons, the Court grants Defendants' motion for summary

judgment with respect to Plaintiff's first, second, third, fourth, and ninth claims and part of his

fifth claim.


### 3. Appeals Sub-Committee's duties under ERISA (part of fifth claim)

#### (i) The "full and fair" requirement

ERISA's "full and fair" requirement provides that, "[i]n accordance with [applicable]

regulations, every employee benefit plan shall . . . (2) afford a reasonable opportunity to any

participant whose claim for benefits has been denied for a full and fair review by the appropriate

named fiduciary of the decision denying the claim."  29 U.S.C. § 1133.  "The Second Circuit

requires substantial compliance to meet § 1133's full and fair review requirement" and that "[t]o

assess whether notice was adequate, precise compliance is not required 'as long as the plan

_____

[2] Even if he had, when faced with two reasonable interpretations, the Court would be
required to uphold the Sub-Committee's interpretation. *See McCauley v. First Unum Life Ins.
Co.*, 551 F.3d 126, 132 (2d Cir. 2008) (quotation omitted).

administrator has substantially complied with such regulations and has provided the beneficiary with sufficient information to appeal the denial.'" *Green v. Hartford Life & Accident Ins. Co.*, No. 5: 07-CV-1253, 2010 WL 3907823, *2 (N.D.N.Y. Sept. 30, 2010) (quotation and other citation omitted).

There is nothing in the record to support Plaintiff's claim that Defendants violated ERISA's § 1133's "full and fair" review requirement. Rather, the evidence unequivocally demonstrates that Plaintiff had a full and fair opportunity to address the accuracy and reliability of his claim. Therefore, the Court grants Defendants' motion for summary judgment with regard to this aspect of Plaintiff's fifth claim.

### (ii) ERISA's disclosure obligation under § 104(b)(4)

Section 104(b)(4) of ERISA requires that a plan administrator deliver certain specific documents upon the written request of any plan participant or beneficiary. *See* 29 U.S.C. § 1024(b)(4). These documents include "a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or *other instruments under which the plan is established or operated*." 29 U.S.C. § 1024(b)(4) (emphasis added). However, "[a]n internal policies and procedures manual is not such a legal document," within the meaning of ERISA § 1024(b)(4). *Black v. Pitney Bowes Inc.*, No. 05 Civ. 108(GEL), 2008 WL 3992306, *11 (S.D.N.Y. Aug. 26, 2008) (citation omitted). Delivery of the required documents must occur within thirty days of a participant's written request. *See id.* If the plan administrator does not deliver the documents within thirty days, ERISA authorizes a court in the exercise of its discretion to assess penalties of $100.00 for each

day the documents are late.  *See* 29 U.S.C. § 1132(c)(1).

Plaintiff contends that Defendants breached § 104(b)(4)'s disclosure obligation by failing to provide him with a document entitled "Overpayment Recovery Policy."  *See* Dkt. No. 29-3 at 11.  Plaintiff argues that the Overpayment Recovery Policy "is a formal legal document that governs or confines" the Plan; and, therefore, the Plan Administrator was required to disclose it. *See* Dkt. No. 28-1 at 16.

The Court disagrees.  The Overpayment Recovery Policy does not contain information as to how the Plan calculated Plaintiff's benefits nor does it provide any information regarding Plaintiff's eligibility.  *See* Dkt. No. 29-1, Exhibit "G'"; *see also* Dkt. No. 32 at 6.  Rather, the Overpayment Recovery Policy is Defendant Kaiser's internal policy for recouping overpayments made to beneficiaries.  Therefore, the Court finds that Defendants did not violate § 104(b)(4) of ERISA and grants Defendants' motion for summary judgment with respect to this aspect of Plaintiff's fifth claim.


### *(iii) Equitable estoppel (claims 6 and 7)*

Equitable estoppel requires that a plaintiff show "(1) a material misrepresentation, (2) reliance, and (3) damage."  *Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir. 1993) (citation omitted).  On the other hand, to state a claim of promissory estoppel, a plaintiff must show ""'[(1)] a clear and unambiguous promise; [(2)] a reasonable and foreseeable reliance by the party to whom the promise is made; and [(3)] an injury sustained by the party asserting the estoppel by reason of his reliance.""'  *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73 (2d Cir. 1989) (quotation omitted).  Courts have often confused or intertwined these two types of estoppel

inappropriately in their decisions. *See Aquilio v. Police Benevolent Ass'n of New York State Troopers, Inc.*, 857 F. Supp. 190, 198 (N.D.N.Y. 1994) (citations omitted).

It is unclear from the amended complaint what kind of estoppel claim Plaintiff is asserting. However, it does not matter because, as a matter of law, Plaintiff has failed to allege facts that would support the elements of either type of estoppel claim. Therefore, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's sixth and seventh claims.

## IV. CONCLUSION

After reviewing the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's cross-motion for leave to amend with respect to his eighth claim is **DENIED as futile**; and Defendants' motion for judgment on the pleadings with respect to Plaintiff's eighth claim is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion for summary judgment with respect to all of Plaintiff's other claims is **GRANTED**; and the Court further

**ORDERS** that counsel shall confer to discuss the resolution of Defendants' counter

claims on or before **January 24, 2014**, and, after such consultation, shall file a joint letter brief,

not to exceed five pages, setting forth the parties' positions with respect to the resolution of such

counterclaims on or before **January 31, 2014.**

**IT IS SO ORDERED.**

Dated: January 3, 2014
       Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge